UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEREMY RAY JACKSON, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | No. 1:18-cv-03292-SEB-MPB |

**Entry Denying Motion for Relief Pursuant to 28 U.S.C. § 2255
and Denying Certificate of Appealability**

This matter is before the Court on a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Jeremy Ray Jackson. For the reasons explained in this Order, the motion is **denied** and dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

### I. Section 2255 Motion Standards

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th

Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Factual Background

On June 4, 2014, Mr. Jackson, along with several other individuals, was indicted for his participation in a conspiracy to distribute methamphetamine. *United States v. Maggard*, Case No. 1:14-cr-00096-SEB-TAB-19 (hereinafter "Crim. Dkt."), dkt. 175. He was charged with two counts: one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and one count of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). *Id.* The indictment included two sentencing enhancements with respect to Mr. Jackson. It stated that Mr. Jackson had one prior felony drug offense, a 2002 conviction in Johnson County, Indiana, for dealing in cocaine and that Jessie Jackson, Mr. Jackson's wife, died as a result of using methamphetamine distributed by Mr. Jackson and a co-defendant. *Id.*

In January 2015, Mr. Jackson wrote a letter to the Court requesting new counsel. Crim. Dkt. 485. After conducting a hearing, the magistrate judge ordered Mr. Jackson's appointed counsel to remain as counsel. Crim. Dkt. 494. Shortly thereafter, appointed counsel filed a motion to withdraw because Mr. Jackson had sent a second letter outlining his dissatisfaction with appointed counsel. Crim. Dkt. 522. After conducting another hearing, the magistrate judge granted counsel's motion to withdraw and appointed another attorney to represent Mr. Jackson. Crim. Dkts. 527, 536. The newly appointed attorney entered an appearance on behalf of Mr. Jackson in April 2015. Crim. Dkt. 551.

In June 2015, Mr. Jackson submitted a letter to the Court outlining communication problems he was having with newly appointed counsel. Crim. Dkt. 618. He requested a hearing, *id.*, and the magistrate judge conducted a hearing, Crim. Dkt. 629. In an order denying Mr.

Jackson's request for new counsel, the magistrate judge explained Mr. Jackson's frustrations with counsel and counsel's response to those complaints. Crim. Dkt. 638. The magistrate judge concluded that Mr. Jackson had not shown that counsel's representation was defective and that the communications between Mr. Jackson and counsel were not "irretrievably broken." *Id.* at 4-6.

In August 2015, a grand jury returned a second superseding indictment against Mr. Jackson and four co-defendants. Crim. Dkt. 650. The charges and sentencing enhancements concerning Mr. Jackson did not change. The United States filed an information pursuant to 21 U.S.C. § 851(a)(1) against Mr. Jackson on August 30, 2015. Crim. Dkt. 706. It outlined the same 2002 offense for dealing in cocaine referenced in the second superseding indictment. *Id.*

Mr. Jackson's jury trial began on September 25, 2015. Crim. Dkt. 783. After ten days, the jury convicted Mr. Jackson of both counts. Crim. Dkts. 792, 794. With respect to the conspiracy count, the jury found that the conspiracy involved 500 grams or more of methamphetamine. Crim. Dkt. 794. It also determined that the United States had proven beyond a reasonable doubt that Jessie Jackson's death resulted from the use of methamphetamine distributed by Mr. Jackson. *Id.*

A presentence investigation report ("PSR") was prepared. Crim. Dkt. 836. As a result of Mr. Jackson's prior felony drug offense and the jury's finding that death resulted from Mr. Jackson's participation in the conspiracy and distribution of methamphetamine, his statutory mandatory term of imprisonment was life. *Id.* at ¶¶ 73-74. Based on a total offense level of 43 and a criminal history category of III, Mr. Jackson's sentencing guidelines range was also life imprisonment. *Id.* at ¶ 75.

The Court sentenced Mr. Jackson on March 30, 2016. Crim. Dkts. 915, 927. He received a sentence of life imprisonment on both counts to be followed by an aggregate term of 10 years' supervised release. Crim. Dkt. 927.

Mr. Jackson appealed his convictions and sentence. Crim. Dkt. 917. He argued that the Court erred in denying a pre-trial motion seeking to suppress evidence "that he (1) took and sent pictures of Jessie, (2) had sex with her, (3) refused to call an ambulance for her, and (4) played video games instead of assisting her, all while Jessie was suffering from an overdose." *United States v. Maggard*, 865 F.3d 960, 973 (7th Cir. 2017). The Seventh Circuit Court of Appeals concluded that this evidence was "appalling," but "necessary," and thus the Court did not abuse its discretion in admitting the evidence. *Id.* at 974-75.

Mr. Jackson filed his motion to vacate, set aside or correct sentence on October 25, 2018. Crim. Dkt. 1129; Dkt. 1. This motion is now fully briefed and ripe for resolution.

### III.    Discussion

Mr. Jackson's § 2255 motion challenges his conviction, raising several allegations of ineffective assistance of counsel. He challenges the performance of both trial counsel and appellate counsel.

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of the *Strickland* test, a petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* To satisfy the second prong,

prejudice, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court will address each of Mr. Jackson's allegations of ineffective assistance of counsel in turn.

### A. Failure to call expert witness

Mr. Jackson's first allegation of ineffective assistance of counsel revolves around trial counsel's failure to call an expert witness to testify that it would have been difficult to determine that methamphetamine was the only cause of Jessie Jackson's death. Dkt. 2 at 4-7. He asserts that the expert witness could have also testified about post-mortem redistribution ("PMR"), which occurs after an individual dies and may result in elevated levels of toxins in the central cavity of the individual's body. *Id.*

"The Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Berg*, 714 F.3d 490, 499 (7th Cir. 2013) (quoting *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005)). "Rather, counsel need only investigate possible lines of defense and make an informed decision." *Blackmon v. Williams*, 823 F.3d 1088, 1103 (7th Cir. 2016) (citing *Berg*, 714 F.3d at 499). "If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic." *Best*, 426 F.3d at 495. Such strategic decisions, if made after a reasonable investigation of the law and facts, are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Based on the email exchange submitted by Mr. Jackson in support of his § 2255 motion, trial counsel made a reasonable decision not to introduce testimony from the expert witness who reviewed the evidence in this case. Although Mr. Jackson asserts that the expert witness would have testified that it is difficult to determine if methamphetamine was the only cause of Jessie

5

Jackson's death, dkt. 2 at 5-6, the expert witness stated in the email attached to Mr. Jackson's motion that no other drugs would have played a role, dkt. 2 at 8. Additionally, with respect to PMR, the expert witness opined that the heart blood sample might have contained elevated levels of methamphetamine. *Id.* However, the expert witness nonetheless concluded that the level of methamphetamine was "[s]till a very high amount" even taking PMR into consideration. *Id.*

The record establishes that trial counsel investigated several lines of defense with the expert witness. But the expert witness refuted all of the potential defenses. Because the expert witness would not have provided an opinion beneficial to Mr. Jackson's defense, trial counsel made an informed, conscious decision not to call him as a witness. *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000) (concluding attorney's decision not to call witness was sound when "based on the attorney's determination that the testimony the [witness] would give might on balance harm rather than help the defendant" (quoting *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997)). This is not deficient performance.

### B. Failure to object to prejudicial evidence

In his next ground of ineffective assistance of counsel, Mr. Jackson asserts that trial counsel rendered ineffective assistance by failing to object to the admission of testimony that, during Jessie Jackson's overdose, Mr. Jackson took pictures of her, played video games, and had sexual relations with her. Dkt. 2 at 9-10. He also alleges that appellate counsel "should have made better argument" concerning these issues on appeal. *Id.* at 10.

Trial counsel did object to the admission of the evidence highlighted by Mr. Jackson. On appeal, the Seventh Circuit recognized that counsel raised objections to the evidence both before and during trial. *Maggard*, 865 F.3d at 972. Trial counsel did exactly what Mr. Jackson alleges she did not do. Therefore, Mr. Jackson has not shown deficient performance by trial counsel.

6

To the extent Mr. Jackson faults appellate counsel for failing to make better arguments, his claim fails because Mr. Jackson has not explained what appellate counsel should have argued on appeal. *See United States v. Banks*, 405 F.3d 559, 568 (7th Cir. 2005) ("There is a strong presumption for finding counsel effective, and [the defendant] bears the burden of proving otherwise."); *United States v. Pergler*, 233 F.3d 1005, 1008-09 (7th Cir. 2000) ("The defendant bears the burden of proof for an ineffective assistance of counsel claim because we adopt a strong presumption that counsel was effective.").

### C. Failure to object to expert witness testimony

Mr. Jackson next challenges trial counsel's failure to object to the testimony of expert witnesses who did not account for PMR in determining whether methamphetamine was the cause of Jessie Jackson's death. Dkt. 2 at 11-13. He asserts that the testimony of the expert witnesses "made it impossible for the jury to come to any other determination or conclusion or take into consideration any other factors that played a part in [Jessie] Jackson's death." *Id.* at 13.

Trial counsel did not move to strike the testimony of the expert witnesses who testified for the United States. Rather, trial counsel elected to cross-examine the forensic toxicologist regarding PMR and the fact that PMR can artificially elevate the level of toxins in an individual's blood. *See* Crim. Dkt. 993 at 74-78. She also elicited testimony from the pathologist that he did not consider PMR in reaching his conclusion as to the cause of death. Crim. Dkt. 993 at 115. Trial counsel then highlighted the impact of PMR in closing argument. Crim. Dkt. 994 at 84. Given trial counsel's investigation into the impact of PMR with her own expert witness and his conclusion that Jessie Jackson had a "very high amount" of methamphetamine even considering PMR, dkt. 2 at 8, trial counsel's strategy was reasonable. Trial counsel's representation was not defective.

### D. Failure to investigate Narcan

Mr. Jackson also contends that trial counsel rendered ineffective assistance because she failed to investigate the potential side effects of Narcan, the drug given to Jessie Jackson in an attempt to resuscitate her. Dkt. 2 at 14-18. He asserts that had trial counsel investigated and understood the side effects of Narcan, she would have objected to the testimony of expert witnesses who opined that Narcan did not play a factor in Jessie Jackson's death. *Id.*

The email submitted by Mr. Jackson undermines his argument that trial counsel did not investigate this line of defense. In an email to the potential defense expert witness, trial counsel asked if Narcan or side effects from Narcan could have caused Jessie Jackson's death. Dkt. 2 at 8. The expert witness's response was simple, "No. Narcan not a factor." *Id.* Trial counsel did the investigation Mr. Jackson alleges that she did not do, and the printout he submitted outlining potential side effects of Narcan, dkt. 22-1, is not sufficient to undermine the opinion of the defense expert witness. This document does not outline the prevalence of the listed side effects nor does it contemplate the use of Narcan in the specific circumstances applicable to Jessie Jackson. Trial counsel's failure to further pursue this possible defense in light of the expert witness's opinion on the question is not unreasonable.

### E. Improper comment during closing argument

In his fifth claim of ineffective assistance, Mr. Jackson argues that trial counsel made an improper comment during closing argument that "prejudiced the jury by insinuating that the punishment of God would be upon them were they to side with the defendant or bring back a verdict of not guilty." Dkt. 2 at 20. While trial counsel was giving closing argument and discussing the possibility that Jessie Jackson obtained methamphetamine from another source, the electricity

8

in the courtroom went off. Trial counsel said, "I hope I'm not being punished for what I said." Crim. Dkt. 994 at 83.

While trial counsel's statement may have been unwise, it is not as harmful as Mr. Jackson asserts when taken in context. In this case, Mr. Jackson was charged with distributing methamphetamine that caused Jessie Jackson's death. Prior to the electricity failing, trial counsel was arguing that Jessie Jackson could have obtained the methamphetamine from somewhere else in light of the alleged lack of evidence that Mr. Jackson gave the methamphetamine to her and the evidence that methamphetamine was prevalent in the neighborhood where they lived. Crim. Dkt. 994 at 80-82. In short, trial counsel was arguing that Jessie Jackson obtained the methamphetamine that killed her on her own—trial counsel was shifting the blame to the victim. That is when the electricity went off, and trial counsel made the comment.

Given this background, it is clear that trial counsel was not asserting that she did not believe in Mr. Jackson's innocence as Mr. Jackson asserts. Dkt. 2. at 20. Rather, trial counsel was insinuating that the electricity failed because she was blaming the victim. Additionally, when trial counsel's closing argument is examined in its entirety, Crim. Dkt. 994 at 73-95, it is clear that trial counsel was vigorously attacking the case against Mr. Jackson and actively representing his interests. Trial counsel's brief comment did not pervasively invade or undermine her closing argument to constitute deficient performance. *See Harrington v. Richter*, 562 U.S. 86, 111 (7th Cir. 2011) ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.").

### F. Failure to raise ineffective assistance claims on direct appeal

Mr. Jackson next contends that he received ineffective assistance from appellate counsel because appellate counsel refused to bring claims of ineffective assistance of counsel on direct

9

appeal. Dkt. 2 at 21-23. He argues that it was apparent that trial counsel provided ineffective assistance given the hearing the magistrate judge conducted when Mr. Jackson requested to replace trial counsel. *Id.*

"Raising an ineffective-assistance claim on direct appeal is almost always imprudent." *United States v. Cates*, 950 F.3d 453, 456 (7th Cir. 2020). Raising such a claim on direct appeal could cause a defendant to "throw away any chance he has at success because the claim may not be presented a second time on collateral attack." *Id.* at 457. Thus, the Seventh Circuit has "repeatedly warned defendants against bringing ineffective-assistance claims on direct appeal." *Id.* In light of this precedent and warning, it was not deficient performance for appellate counsel to elect not to pursue ineffective assistance claims on direct appeal.

To the extent Mr. Jackson can be understood to argue that appellate counsel should have challenged the magistrate judge's refusal to replace trial counsel with a third attorney, it was not unreasonable for appellate counsel to forego such an argument. The standard of review applicable to the denial of a motion for new counsel is abuse of discretion. *See United States v. Volpentesta*, 727 F.3d 666, 672 (7th Cir. 2013). Here, the magistrate judge issued a thorough opinion denying Mr. Jackson's request for new counsel after conducting a hearing. Crim. Dkt. 638. The magistrate judge reviewed all of Mr. Jackson's complaints about trial counsel and outlined all of the work trial counsel had done during the short time she had represented Mr. Jackson prior to his request. This potential appellate argument was therefore neither obvious nor clearly stronger than the arguments raised by appellate counsel. *See Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) ("Appellate counsel's performance is deficient if counsel fails to appeal an issue that is both obvious and clearly stronger than one that was raised."). Appellate counsel's performance was not deficient.

### G. Failure to investigate medical conclusions of pathologist

In his next allegation, Mr. Jackson contends that trial counsel rendered ineffective assistance by failing to investigate the accuracy of the information provided to the pathologist regarding the time of Jessie Jackson's death and the impact that information had on the pathologist's conclusions as to Jessie Jackson's cause of death. Dkt. 2 at 24-26. He alleges that trial counsel could have objected to the admission of the pathologist's testimony and asked for a second opinion as to the cause of death. *Id.*

As with some of Mr. Jackson's other claims, the record shows that trial counsel conducted the investigation that Mr. Jackson claims was not conducted. In the email exchange with the defense expert witness, trial counsel asked whether Jessie Jackson's time of death could have affected the final conclusion as to her cause of death. Dkt. 2 at 8. The expert witness responded, "No the timing would not alter the final conclusion of an overdose." *Id.* Trial counsel conducted the investigation Mr. Jackson wanted. The results just were not in his favor. Trial counsel's performance was not deficient on this basis.

### H. Failure to challenge sufficiency of the evidence

Mr. Jackson next challenges the efficacy of trial counsel's representation by arguing that she failed to challenge the sufficiency of the evidence on the distribution count. Dkt. 2 at 27-28. Again, however, the record reveals that trial counsel did challenge the sufficiency of the evidence. Trial counsel moved for a directed verdict on the distribution count under Federal Rule of Criminal Procedure 29. Crim. Dkt. 993 at 170-71. After the Court denied that motion, *id.* at 171, trial counsel made extensive arguments during closing argument about the lack of evidence concerning distribution, Crim. Dkt. 994 at 80-83. Trial counsel did what Mr. Jackson wanted. She did not provide ineffective assistance.

### I. Cumulative error

Finally, Mr. Jackson contends that he received ineffective assistance of counsel as a result of cumulative errors. Dkt. 2 at 29-30. Because the Court has found "no error to have occurred associated with ineffective assistance of counsel arguments, [] there is no error to become cumulative." *McCullough v. Butts*, Case No. 1:13-cv-00496-TWP-MJD, 2015 WL 5837563, *5 (S.D. Ind. Oct. 6, 2015) (collecting cases). Mr. Jackson is not entitled to relief on this argument.

### IV. Conclusion

For the reasons explained above, Mr. Jackson is not entitled to relief on his § 2255 motion. Mr. Jackson's trial counsel did not provide ineffective assistance. Accordingly, Mr. Jackson's motion for relief pursuant to § 2255 is **denied** and this action is dismissed with prejudice.

Judgment consistent with this Order shall now issue and the Clerk shall **docket a copy of this Order in No. 1:14-cr-00096-SEB-TAB-19**. The motion to vacate, Crim. Dkt. [1129], shall also be **terminated** in the underlying criminal action.

## V. Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2553(c), the Court finds that Mr. Jackson has failed to show that reasonable jurists would find it "debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 7/10/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JEREMY RAY JACKSON
12372-028
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bradley.blackington@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov